UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>    v.<br>KEITH HOPKINS,<br>    Defendant. | Case No. CR-15-00545 YGR<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS**<br><br>Re: Dkt. No. 22 |

Defendant Keith Hopkins was indicted for violations of: 18 U.S.C. §§ 922(g)(1) (felon in possession of a firearm); 21 U.S.C. § 841(a)(1), (b)(1) (B)(iii) (possession with intent to distribute crack cocaine); 18 U.S.C. § 924(c)(1)(A)(i) (using or carrying a firearm during and in relation to a drug trafficking crime); and forfeiture. (Superseding Indictment, Dkt. No. 21.) Hopkins filed a motion to suppress evidence and statements obtained during and following a parole search of Hopkins at the residence of a third party, Sandra Randolph. (Dkt. No. 22.) The government has opposed the motion. (Dkt. No. 24.) The Court heard oral argument on August 18, 2016.

Having carefully considered the papers submitted, the pleadings in this action, oral argument, and for the reasons set forth below, the Court hereby **GRANTS** the motion to suppress evidence and statements.

**I.   BACKGROUND[1]**

In 1999, defendant Keith Hopkins was convicted of second degree robbery with a weapon enhancement, and for being a felon in possession of a firearm. In 2014, he was released on parole with a warrantless search condition. (Declaration of SAUSA Erin A. Cornell ("Cornell Decl."), Dkt. No. 28, Ex. 1.) The search condition states:

---

[1] The following facts are not materially in dispute, except as where noted.

> "You, your residence, and any property under your control are subject to search or seizure by a probation officer, an agent or officer of the California Department of Corrections and Rehabilitation, or any other peace officer, at any time or the day or night, with or without a search warrant, with or without cause."

*Id.* at 1. In around April 2015, Officer Tyler Walstrum of the Oakland Housing Authority ("OHA") encountered a mobile home blocking traffic and in that context met Hopkins, who personally advised Walstrum that he lived therein ("Parole Address"). (Supplemental Decl., of Tyler Walstrum, Dkt No. 32-3 ("Walstrum Supp. Decl."), ¶ 2.) Walstrum asked dispatch to run a records check, learned that Hopkins was on parole, and then conducted a parole compliance check on the mobile home finding nothing illegal. (*Id.*)

On September 19, 2015, Officer Walstrum and two other OHA officers went back to Hopkins' Parole Address to conduct a parole compliance check. (*Id.* ¶ 3.) The officers had no warrant. Officers checked the registration of the mobile home parked in front of the Parole Address and confirmed that it was registered to Hopkins at the Parole Address. (Declaration of Tyler Walstrum, Dkt. No. 25 ("Walstrum Decl."), Ex. 1, at 4; Declaration of Madeline Larsen, Dkt. 31-3 ("Larsen Decl.") ¶ 4.) The officers encountered a juvenile male, 14-year-old J. Hopkins, who identified himself as Hopkins' nephew. (Walstrum Supp. Decl. ¶ 6.)

The parties dispute exactly what J. Hopkins told officers. The government claims that Hopkins' nephew told them that defendant Hopkins no longer lived at the Parole Address, but lived at another address down the street ("Searched Address"). (Walstrum Decl., Ex. 1, at 4.) However, J. Hopkins claims that he only informed officers that defendant Hopkins was at another address at that time and then pointed officers towards the Searched Address, as well as another building.[2] (Declaration of J. Hopkins, Dkt. No. 31-1, ¶¶ 4, 7-8.) Hopkins' nephew also told the officers that the Lincoln Navigator parked in the complex at the Searched Address belonged to defendant Hopkins. (Walstrum Decl., Ex. 1 at 4.) According to Walstrum's report, a "file check" on the Lincoln Navigator revealed that it was registered to defendant Hopkins at the Searched Address as of August 10, 2015. (*Id.*) The record does not indicate whether the officers conducted a "file check" on Walstrum's driver's license, which was issued on August 6, 2016 and listed the

---

[2] For the reasons set forth below, the Court need not resolve this factual dispute.

Parole Address as his residence. (Larsen Decl., ¶ 2.)

Next, the officers knocked on the door of the Searched Address. Legal tenant Sandra Randolph answered. When questioned about defendant Hopkins, Randolph said she did not know him or had not seen him recently. The officers noted that Ms. Randolph "became very argumentative" and also "appeared nervous and was sweating profusely." (Walstrum Decl., Ex. 1, at 4.) Dispatch ran a file check for Randolph and advised the officers that she was on probation for petty theft with an "S7 four way search clause." (*Id.*) She had consented to a four-way search clause as part of her probation conditions. That condition states:

> "4 Way Search. Submit to warrantless search and seizure by any law enforcement officer at any time of the day or night, including: person, place of residence, vehicle, and any property under your control."

(Cornell Decl. Ex. 2 at 2.) Randolph acknowledged her probation status and allowed the officers into her apartment. (Walstrum Decl., Ex. 1, at 4.) Officers entered the Searched Address, found Hopkins upstairs in a bedroom, seized myriad contraband, and obtained certain statements from him.[3] The motion seeks globally to suppress the items and statements.

## II. DISCUSSION

The government argues the legality of the search of Randolph's home on two bases: (1) officers had probable cause to conduct a parole search for Hopkins at the Searched Address, and (2) the search was proper based on Randolph's probation search condition. The Court addresses each as a threshold issue.

///

///

---

[3] Upon searching the room, officers found shotgun ammunition. Officer Walstrum asked Hopkins where the shotgun and any other firearms were located. (Walstrum Decl., Ex. 1, at 5.) It is disputed whether officers provided Hopkins with a *Miranda* warning prior to asking this question. Officers arrested Hopkins and, upon conducting a search incident to arrest, found additional contraband. (*Id.* at 6.) Officers drove Hopkins to the Oakland Housing Authority Police Department station. (*Id.*) Officer Brauli Rodriguez claims that he took a confession statement from Hopkins, which Hopkins signed. (Declaration of Brauli Rodriguez, Dkt. No. 26, Ex. 1, at 2 and Ex. 2.) Hopkins contends that his confession was involuntary because he made it after officers threatened to take Randolph into custody if he did not confess to owning the seized items. The government denies that the officers made any threats to Hopkins.

3

### A. Probable Cause to Conduct a Parole Search

"The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). "The warrantless entry into [a third party's] home cannot be justified as a search for a parolee in what *might have been* the parolee's residence." *Cuevas v. De Roco*, 531 F.3d 726, 732 (9th Cir. 2008) (emphasis supplied). Rather, "'before conducting a warrantless search pursuant to a parolee's parole condition, law enforcement officers must have probable cause to believe that the parolee is a resident of the house to be searched.'" *United States v. Howard*, 447 F.3d 1257, 1262 (9th Cir. 2006) (quoting *Motley v. Parks*, 432 F.3d 1072, 1080 (9th Cir. 2005) (*en banc*) (alteration supplied by *Howard* omitted), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (*en banc*)). The standard for establishing probable cause as to residence is "relatively stringent," requiring "strong evidence" that the parolee resides at the address. *United States v. Grandberry*, 730 F.3d 968 (citing *United States v. Franklin*, 603 F.3d 652, 657 (9th Cir. 2010); *Cuevas v. De Roco*, 531 F.3d at 736).

In *Howard*, the Ninth Circuit provided guidance for analyzing this issue. There, four factors predominated, namely whether: (1) the police ascertained after an investigation that the defendant was residing at the place searched, rather than at the parole address on file; (2) the search was based on direct observations confirming that the defendant was residing in the place searched (*e.g.*, parolee seen running errands, repeatedly entering or leaving over the span of multiple days, or receipt of mail at the residence searched); (3) the parolee had his/her own key to the residence and was seen using the same; and (4) co-residents confirmed that the parolee lived there. *See Howard*, 447 F.3d at 1265-66.

Here, none of those factors exist. Regarding the first factor, police had questionable information suggesting that Hopkins was living at the Searched Address and not at his Parole Address. The officers' only evidence consisted of: (1) the disputed statement of a 14-year-old boy, and (2) the registration of the Lincoln Navigator at the Searched Address in Hopkins' name. First, the statement of a 14-year-old boy regarding Hopkins' residence or location, without more, was not a reliable source of evidence. This is especially so in light of the countervailing evidence

4

1 that the mobile home was registered to Hopkins at the Parole Address, that his recently renewed driver's license listed the Parole Address as his residence, and that Hopkins had been found there during a parole check five months prior. Second, the registration of the vehicle at the Searched Address also did not give rise to probable cause that Hopkins lived there. There are other valid reasons why the vehicle may have been registered to that address, and therefore the registration alone was not sufficient evidence of Hopkins' residence status.

Regarding the second factor, unlike the officers' April encounter with Hopkins, they had no direct observations confirming that Hopkins was residing at the Searched Address (*e.g.*, parolee seen running errands, repeatedly entering or leaving over the span of multiple days, or receipt of mail at the residence searched). The police must have probable cause to believe that the location is the parolee's *residence*; presence as a guest does not suffice. *Howard*, 447 F.3d at 1265-66; *see also id.* at 1262 (information that parolee is occasional overnight guest is insufficient for probable cause to believe that parolee resides at residence); *Franklin*, 603 F.3d at 657 (holding it is not enough for probable cause that parolee "happens to be seen there").

Regarding the third and fourth factors, the government does not contend that officers observed Hopkins with a key to the Searched Address or that any co-residents confirmed that he lived there.

In sum, none of the *Howard* factors set forth were present. The officers' investigation into whether Hopkins resided at the Searched Address was entirely inadequate. Officers did not contact Hopkins' parole officer before entering the Searched Address. They did not try to observe him entering the Searched Address or conducting activities indicating that he lived there. The boy's statement and Hopkins' car registration alone do not meet the "relatively stringent" or "strong evidence" requirement to allow a warrantless search of a third party's home. Accordingly, the Court finds that the entry into the Searched Address was not justified as a parole search.

**B.   Search Based on Randolph's Probation Search Condition**

Next, the government argues that the entry into the Searched Address was legal pursuant to Sandra Randolph's search condition.

"The touchstone of the Fourth Amendment is reasonableness, and the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. Knights*, 534 U.S. 112, 118-19 (2001) (citation and internal quotation marks omitted). Courts consider whether the search was reasonable under a "totality of the circumstances" approach, "with the search condition being a salient circumstance." *Id.* at 112 (citation omitted). Importantly, the fact that a probationer has agreed to a search condition—even a suspicionless search condition—is not dispositive. *See United States v. Lara*, 815 F.3d 605, 609 (9th Cir. 2016) ("Lara's acceptance of the terms of probation, including suspicionless searches of his person and property, is one factor that bears on the reasonableness of the search, but it is not in itself dispositive."). At minimum, officers must have at least reasonable suspicion to conduct a search.[4]

Regarding the first balancing consideration, the probationer's privacy interest depends on several factors, the most important of which are her status as a probationer, the clarity of the conditions of probation, and the nature of the contents of the item searched. *See Lara*, 815 F.3d at 610. Probationer status means expectation of privacy is "significantly diminished," but "still substantial." *Id.* at 610. Furthermore, a search condition "significantly diminishe[s]" an individual's privacy interests when the probation order "clearly expressed the search condition" of

---

[4] The parties dispute whether the officers required probable cause or reasonable suspicion to search Randolph's home based on her probation condition under *United States v. King*, 687 F.3d 1189 (9th Cir. 2012) (reasonable suspicion of wrongdoing not required to conduct a probation search of a *violent* felon who has agreed to a suspicionless search condition). Here, Randolph's search condition did not have the same suspicionless-search language as in *King*. *See King*, 736 F.3d at 810. Randolph is also not a violent felon, unlike King. *Id.* ("We need not decide whether the Fourth Amendment permits suspicionless searches of probationers who have *not* accepted a suspicionless-search condition, or of lower level offenders who have accepted a suspicionless-search condition, because those cases are not before us." (emphasis in original)).

Thus, the Court finds on this record that Randolph is not subject to suspicionless searches under the limited holding of *King*. Rather, under the diminished expectation of privacy for probationers recognized in *Knights*, Randolph's warrantless probation search condition requires at least reasonable suspicion to perform a search. *Knights*, 534 U.S. at 121 ("Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term 'probable cause,' a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable.").

1 which probationer "was unambiguously informed." *Id.* However, a reasonable expectation of
2 privacy is increased if the probationer was not convicted of a particularly "serious and intimate"
3 offense. *Id.*

4 Regarding the second balancing factor, "[p]robationary searches advance at least two
5 related government interests—combating recidivism and helping probationers integrate back into
6 the community." *Id.* at 612 (citations omitted). "These are important interests whose strength in a
7 particular case varies depending on the degree to which the government has a *specific reason* to
8 suspect that a particular probationer is reoffending or otherwise jeopardizing his reintegration into
9 the community." *Id.* (emphasis added).

10 Here, Randolph had agreed to a four-way search condition that allowed a warrantless
11 search of her residence as part of her probation conditions. This diminished her privacy interests.
12 However, the probation condition did not clearly state that she was subject to suspicionless
13 searches, and she was on probation for a nonviolent misdemeanor crime. Thus, the facts weigh in
14 favor of her privacy interests.

15 As for the government's interest in searching Randolph's home, its interest was minimal
16 given the circumstances. In support of reasonable suspicion, the government offers only that
17 Randolph was nervous and sweaty and gave conflicting answers when she answered the door at
18 the Searched Address. This is not a "specific reason" to suspect that she was reoffending or
19 jeopardizing her reintegration into the community. *Cf. Lara*, 815 F.3d 605 (noting that
20 defendant's failure to meet with probation officer at appointed time, which prompted search of his
21 home and then cell phone, was "worlds away" from the suspected crimes that prompted the
22 searches in *King* (homicide) and *Knights* (vandalism and arson)). Here, the officers did not have
23 any suspicion that Randolph had engaged in any crime or wrongdoing. Therefore, the search of
24 Randolph's home was not justified as a probation search.

25 As the entry into Randolph's home constituted a search in violation of the Fourth
26 Amendment, the evidence and statements obtained as a result of the search were illegally obtained.
27 The Court need not consider Hopkins' remaining arguments for suppression.

28

7

### III. CONCLUSION

For the reasons set forth above, the motion to suppress the evidence and statements is **GRANTED**.

This Order terminates Docket Number 22.

**IT IS SO ORDERED**.

Dated: August 31, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**